**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **STEPHEN JOHN YOUNG,** | ) | |
| Petitioner, | ) | **No. 25-cv-50129** |
| | ) | |
| **v.** | ) | |
| | ) | **Hon. Iain D. Johnston** |
| **KAITLYN RAE YOUNG,** | ) | |
| Respondent. | ) | |

<u>**ANSWER TO VERIFIED COMPLAINT AND PETITION OF STEPHEN JOHN YOUNG FOR ISSUANCE OF A CHOW CAUSE ORDER AND FOR RETURN OF THE MINOR CHILD TO THE CHILD'S HABITUAL RESIDENCE OF IRELAND AND JURISDICTION OF IRELAND**</u>

NOW COMES the Respondent, KAITLYN RAE YOUNG (hereinafter "Kaitlyn"), and, in response to Petitioner's Verified Complaint and Petition of Stephen John Young for Issuance of a Show Cause Order and for Return of the Minor Child to the Child's Habitual Residence of Ireland and Jurisdiction of Ireland (hereinafter "Petition for Return"), states as follows:

1.      This verified complaint and petition is brought pursuant to:

- The Convention on the Civil Aspects of International Child Abduction, done at the Hague on 25 October 1980 (the "Convention"); The International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.*

- The Uniform Child Custody Jurisdiction and Enforcement Act, 750 ILCS 36/101 *et. seq.* (the "UCCJEA").

**RESPONSE:** In response to Paragraph 1 of Petitioner's Petition for Return, KAITLYN admits that this verified complaint and petition are filed pursuant to the Convention and ICARA. KAITLYN denies the remainder of the allegations contained in said Paragraph.

2.     The Convention went into effect in the United States on July 1, 1988, and was accepted between the United States and Ireland, the Habitual Residence of the minor child, on October 1, 1991.

**RESPONSE:**  In response to Paragraph 2 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein.


3.     The objective of the Convention is to secure the prompt return of the child wrongfully removed to and retained in any Contracting State (Article 1(a)) and to ensure that rights of custody and of access under to law od one Contracting State are effectively respected in other Contracting States (Article 1(b)). Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of the children."

**RESPONSE:**  Paragraph 3 of Petitioner's Petition for Return calls for legal conclusions to which no response is required. To the extent a response is required, KAITLYN admits that Paragraph 3 accurately quotes portions of the Hague Convention, and otherwise denies Paragraph 3 to the extent that it misstates the law.


4.     The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* (1995) (hereinafter "ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." 42 U.S.C. § 11601(b)(1).

**RESPONSE:**  Paragraph 4 of Petitioner's Petition for Return calls for legal conclusions to which no response is required. To the extent a response is required, KAITLYN admits

2

that Paragraph 4 accurately quotes portions of ICARA, and otherwise denies Paragraph 3
to the extent that it misstates the law. KAITLYN notes that ICARA was originally
located at 42 U.S.C. § 11601 *et seq.* in 1988 and was reclassified in 2014 as 22 U.S.C. §
9001 *et seq.*

5.      Pursuant to Article 19 of the Convention a decision under the Convention is not a
determination of any underlying child custody claims.

**RESPONSE:** In response to Paragraph 5 of Petitioner's Petition for Return, KAITLYN
admits the allegations contained therein.

<u>**JURISDICTION**</u>

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. 11603(a).

**RESPONSE:** In response to Paragraph 6 of Petitioner's Petition for Return, KAITLYN
does not contest jurisdiction.  KAITLYN notes that the provision of ICARA cited was
originally known as 42 U.S.C. § 11603(a) in 1988 and was reclassified in 2014 as 22
U.S.C. § 9003(a).

7.      Venue is proper in the United States District Court for the Northern District of
Illinois, pursuant to *28 U.S.C. § 9003, 28 U.S.C. § 1391(d) and 42 U.S.C. § 11603(b)*, because
the Respondent, KAITLYN RAE YOUNG (hereinafter "Kaitlyn"), and the minor child who are
subject of this Verified Complaint and Petition are currently located in Garden Prairie, Illinois, a
municipality in Boone County, Illinois, which is located in this District, Western Division.

**RESPONSE:** In response to Paragraph 7 of Petitioner's Petition for Return, KAITLYN
does not contest venue, and admits the allegations contained therein.  KAITLYN notes

that the provision of ICARA cited was originally known as 42 U.S.C. § 11603(a) in 1988 and was reclassified in 2014 as 22 U.S.C. § 9003(b).

## **BACKGROUND ALLEGATIONS**

8.      Stephen is a resident of Ireland seeking the return of his minor child, who was wrongfully removed and continues to be retained in the United States of America from Ireland by the child's mother without Stephen's consent. Stephen is both an "applicant" as defined in *and 42 U.S.C. § 11602(1)* and a "petitioner" as defined in *and 42 U.S.C. § 11602(4).*

> **RESPONSE:** In response to the first sentence of Paragraph 8 of Petitioner's Petition for Return, KAITLYN denies that the minor child was wrongfully removed from Ireland, and admits the remainder of the allegations contained therein. The second sentence of Paragraph 8 calls for a legal conclusion to which no response is required. To the extent a response is required to the second sentence of Paragraph 8, KAITLYN denies the second sentence of Paragraph 8 to the extent that it misstates the law. KAITLYN notes that the provisions of ICARA cited were reclassified in 2014 as 22 U.S.C. § 9002(1) and 22 U.S.C. § 9002(4).

9.      The minor child, B.J.Y., a male, was born in Dublin, Ireland in 2021 and is currently three (3) years of age. A true and accurate copy of B.J.Y.'s Birth Certificate is attached as **Exhibit A**.

> **RESPONSE:** In response to Paragraph 9 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein.

10.      Stephen is the natural and biological Father of B.J.Y.

**RESPONSE:** In response to Paragraph 10 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein.

11.     Stephen and Kaitlyn were married on April 16, 2020, in Bigfork, Montana. A copy of the parties' marriage certificate is attached as **Exhibit B**.

**RESPONSE:** In response to Paragraph 11 of Petitioner's Petition for Return, KAITLYN admits that the parties were married by proxy on April 16, 2020 in Bigfork, Montana, and that a copy of the parties' marriage certificate is attached as **Exhibit B**. Answering further, KAITLYN states that the proxy marriage was never registered in Ireland.

12.     The parties have been living separate and apart since June 2023. A copy of the parties' separation agreement is attached as **Exhibit C**.

**RESPONSE:** In response to Paragraph 12 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein. Answering further, KAITLYN states that the separation agreement was drafted by the parties themselves, was not reviewed by any solicitor prior to being signed, and was not filed with or submitted to any court or other similar authority in Ireland.

13.     Prior to their wrongful retention in the United States, B.J.Y. resided in Ireland where pursuant to the separation agreement, Stephen and Kaitlyn shared equal custody of B.J.Y. B.J.Y. resided with each parent for seven days out of every fourteen days.

**RESPONSE:** In response to Paragraph 13 of Petitioner's Petition for Return, KAITLYN denies the retention of B.J.Y. in the United States was wrongful, and admits the remainder of the allegations contained therein.

14. On December 6, 2024, Stephen dropped B.J.Y. off at school in the morning. Stephen expected Kaitlyn to retrieve B.J.Y. from school that afternoon, as this day was the start of Kaitlyn's time with B.J.Y., pursuant to their custody schedule. Stephen expected to see B.J.Y. next on December 11, 2024.

**RESPONSE:** In response to Paragraph 14 of Petitioner's Petition for Return, KAITLYN lacks sufficient knowledge or information to admit or deny the allegations contained therein and therefore denies same.

15. On the afternoon of December 6, 2024, Kaitlyn retrieved B.J.Y. from school and collected all of B.J.Y.'s belongings from the school's staff under the pretense of needing to wash them. Kaitlyn also advised the school's staff that B.J.Y. would not be in attendance the following week.

**RESPONSE:** In response to Paragraph 15 of Petitioner's Petition for Return, KAITLYN denies the allegations contained therein. Answering further KAITLYN states that she retrieved B.J.Y. from daycare on December 6, 2024, that she collected B.J.Y.'s water bottle to wash it, along with his other possessions that were usually retrieved with him, and she informed the daycare that B.J.Y. would not be in attendance the following week.

16.     On December 11, 2024, Stephen arrived at B.J.Y.'s school in the afternoon to retrieve B.J.Y. and take him to see a light show at the Dublin Zoom. At this point, Stephen was entirely unaware of any instructions Kaitlyn had given the school regarding B.J.Y.'s presence and had not agreed to any changes in the agreed upon custody arrangement, provided for in **Exhibit C**, with which both Stephen and Kaitlyn had previously complied.

> **RESPONSE:** In response to Paragraph 16 of Petitioner's Petition for Return, KAITLYN admits that, on December 11, 2024, Stephen had not agreed to any changes in the parenting time arrangement set forth in the parties' separation agreement. KAITLYN lacks sufficient knowledge or information to admit or deny the remainder of the allegations contained therein and therefore denies same.

17.     When Stephen arrived at school to retrieve B.J.Y., the school's staff relayed to Stephen what Kaitlyn had told them on December 6: that B.J.Y. was not expected to be in attendance that week. Upon learning that Kaitlyn had deviated from the custody arrangement, Stepen immediately made numerous attempts to contact Kaitlyn, but to no avail.

> **RESPONSE:** In response to Paragraph 17 of Petitioner's Petition for Return, KAITLYN lacks sufficient knowledge or information to admit or deny the allegations contained therein and therefore denies same.

18.     After trying and failing to contact Kaitlyn by phone, Stephen went to Kaitlyn's apartment to see if she was home. Upon arrival, Stephen did not see Kaitlyn's car nor any other indication that Kaitlyn or B.J.Y. was present. After attempting to contact anyone who may have been inside the apartment, Stephen used a virtual key belonging to a mutual friend to access the

apartment and discovered that the apartment had been cleared out. All of Kaitlyn's and B.J.Y.'s clothes and other personal effects were gone along with a number of furniture items including B.J.Y.'s bed.

**RESPONSE:** In response to Paragraph 18 of Petitioner's Petition for Return, KAITLYN admits that, by December 11, 2024 her clothes, B.J.Y.'s clothes and other personal effects were no longer in her apartment. KAITLYN lacks sufficient knowledge or information to admit or deny the remainder of the allegations contained therein and therefore denies same.

19. After still receiving no communication from Kaitlyn, Stephen took his mother and sister with him to the Shankill Garda Station to seek help and advice from the authorities.

**RESPONSE:** In response to Paragraph 19 of Petitioner's Petition for Return, KAITLYN lacks sufficient knowledge or information to admit or deny the allegations contained therein and therefore denies same.

20. During their interview with Stephen, the Gardai were able to establish that Kaitlyn's car had been sold and that a number of pieces of Kaitlyn's furniture were listed for sale on an online marketplace as early as two weeks prior under the pretense of needing to downsize the apartment. The Gardai were able to contact the management company for Kaitlyn's apartment and found that the last access to Kaityn's apartment occurred on the evening of December 5.

**RESPONSE:** In response to Paragraph 20 of Petitioner's Petition for Return, KAITLYN denies that the last access to her apartment occurred on December 5, 2024. KAITLYN

8

lacks sufficient knowledge to admit or deny the remainder of the allegations contained in Paragraph 20, and therefore denies same.

21.     On the evening of December 11, Stephen received an email from Kaitlyn stating that she and B.J.Y. were at Kaitlyn's father's house in Illinois and had traveled there on December 7.

**RESPONSE:**  In response to Paragraph 21 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein.

22.     Kaitlyn has apparently started a divorce action in Boone County, Illinois and refuses to return B.J.Y. to his habitual residence of Ireland. This Petition should cause an immediate stay of the divorce proceeding. Allowing the divorce action to continue would frustrate the Hague Convention's goal of effecting a prompt return of a wrongfully removed child. Further, Article 16 of the Hague Convention provides that custody actions must not proceed following notice of a Hague Convention petition. There is no reason why divorce actions should be treated differently, especially if the divorce proceedings involve the question of custody.

**RESPONSE:**  In response to Paragraph 22 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein. Answering further, KAITLYN states that the Boone County Court has continued the dissolution of marriage proceedings and set a future status date in August in light of this pending case.

## LEGAL STATUS OF STEPHEN AND THE CHILD

### Stephen's Custody Rights

23.     This Court consults the law of the country of habitual residence in order to determine a petitioner's rights of custody. *Abbott v. Abbott*, 560 U.S. 1, 10 (2010); *Norinder v Fuentes*, 657 F.3d 526, 533 (7th Cir. 2011). "The standard for finding that a parent was exercising his [or her] custody rights is a liberal one, and courts will generally find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Walker v. Walker*, 701 F.ed 1110, 1121 (7th Cir. 2021) (internal quotation marks and citation omitted).

> **RESPONSE:**  Paragraph 23 of Petitioner's Petition for Return calls for legal conclusions to which no response is required. To the extent a response is required, KAITLYN admits that Paragraph 23 accurately quotes portions of the cited case law and otherwise denies Paragraph 23 to the extent that it misstates the law.

24.     At the time of the child's removal from Ireland, Stephen was exercising his rights of custody within the meaning of Articles Three and Five of the Convention by maintaining regular contact with the minor child at their residence in Ireland in accordance with the terms of the Separation Agreement entered into between Stephen and Kaitlyn (see **Exhibit C**). But for Kaitlyn's removal and retention of the child, Stephen would have continued to exercise his rights of custody.

> **RESPONSE:**  In response to Paragraph 24 of Petitioner's Petition for Return, KAITLYN admits that, at the time of the child's removal from Ireland, Stephen was maintaining regular contact with the minor child. KAITLYN denies the remainder of the allegations contained in Paragraph 24.

**Ireland is the Child's Habitual Residence**.

25.     The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover … a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The analysis "focuse[s] on the parents' last shared intent in determining habitual residence." *Koch*, 450 F.3d at 715. In the absence of a clear shared intent between the parties, the Supreme Court interprets the meaning of "habitual residence" within the Convention by claiming that "[a] child 'resides' where [he] lives, and that a residence is habitual only when it is "more than transitory," which will be necessarily fact specific. *Monasky v. Taglieri*, 589 U.S. 68, 76 (2020).

> **RESPONSE:** Paragraph 25 of Petitioner's Petition for Return calls for legal conclusions to which no response is required. To the extent a response is required, KAITLYN admits that Paragraph 25 accurately quotes portions of the cited case law and otherwise denies Paragraph 25 to the extent that it misstates the law.

26.     From the birth of the child until his wrongful retention on or about December 7, 2024, B.J.Y. resided in Ireland, splitting his time equally between Stephen and Kaitlyn.

> **RESPONSE:** In response to Paragraph 26 of Petitioner's Petition for Return, KAITLYN admits that B.J.Y. resided in Ireland from his birth until December 7, 2024. KAITLYN denies the remainder of the allegations contained in Paragraph 26.

27.     The minor child's friends and family are located in Ireland, the child maintains an Irish passport and attends school in Ireland.

**RESPONSE:** In response to Paragraph 27 of Petitioner's Petition for Return, KAITLYN admits that the child has an Irish passport and has some family members in Ireland. KAITLYN denies the remainder of the allegations contained therein. Answering further, KAITLYN states that the minor child has friends and family in the United States and has an American passport.

28. Stephen's habitual residence is Ireland, and he has maintained said residence since B.J.Y.'s birth.

**RESPONSE:** In response to Paragraph 28 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein.

29. Kaitlyn's habitual residence at the time of the child's removal and wrongful retention was Ireland.

**RESPONSE:** In response to Paragraph 29 of Petitioner's Petition for Return, KAITLYN denies the allegations contained therein.

30. There were never any discussions between Stephen and Kaitlyn to change the minor child's habitual residence from Ireland to the United States.

**RESPONSE:** In response to Paragraph 30 of Petitioner's Petition for Return, KAITLYN denies the allegations contained therein.

**Retention of the Child in the United States was Wrongful**.

31.     In violation of Irish Law, specifically Article 6 of the Guardianship of Infants Act 1964, Kaitlyn's retention of the minor child without Stephen's authorization or consent or Order of Court is unlawful:

> "Article 6 – Rights of parents to guardianship:
>
>> 1.  The father and mother of an infant shall be guardians of the infant jointly."

The Eleventh Circuit has held, agreeing with Irish courts, that guardianship under Irish law creates a sufficient "right of custody" under the Hague Convention. *Hanley v. Roy*, 485 F.3d 641, 648 (11th Cir. 2007) (ordering a minor child to be returned to their testamentary guardians in Ireland after the child was removed without the guardians' consent to the United States). Further, courts have held that where there exists a joint guardianship of a minor child, the removal of that child without the consent of one of the child's guardians is enough to establish a prima facie showing under the Hague Convention. *Judge v. Williams*, 2011 WL 3100346 at *5 (E.D.N.C. July 25, 2011). The Court in *Williams* clarified that custody rights stemming from joint guardianship include "the right to make decisions of overriding seminal importance to [the child]'s upbringing," and that "[t]he nation where [the child] is reared is a matter of overriding seminal importance to [the child]'s upbringing, and Petitioner has the right to take part in that decision." *Id.* Here, as in *Williams*, Stephen has had his right to take part in the decision of where to raise his child stripped away. Stephen's custody rights arising from his status as a joint guardian of B.J.Y. have been and continue to be violated by the wrongful retention of B.J.Y. outside of Ireland.

**RESPONSE:** Paragraph 31 of Petitioner's Petition for Return calls for a legal conclusion to which no response is required. To the extent any response is required, , KAITLYN

admits that that Paragraph 31 accurately quotes Article 6 of the Guardianship of Infants

Act of 1964 and accurately quotes the case law cited therein, and otherwise denies the

allegations contained therein to the extent that they misstate the law. Answering further,

KAITLYN states that Stephen is not a testamentary guardian as were the child's

grandparents in *Hanley v. Roy*, 485 F.3d 641, 643-4 (11th Cir. 2007), nor had the parties

in this case "executed a statutory guardianship declaration," as the parties had in *Judge v.

Williams*, 2011 WL 3100346 at *2 (E.D.N.C. July 25, 2011), nor, on information and

belief, is any guardianship proceeding related to the minor child pending in Ireland


32.     In violation of Articles 3 and 5 of the Convention, Kaitlyn's retention of the

minor child without Stephen's authorization or consent or Order of Court is unlawful:

> "Article 3.
> The removal or the retention of a child is considered to be wrongful where-
>> *a)* It is in breach of rights of custody attributed to a person, an institution or an
>> other body, either jointly or alone, under the law of the State in which the
>> child was habitually resident immediately before the removal or retention; and
>> *b)* At the time of removal or retention those rights were actually exercised, either
>> jointly or alone, or would have been so exercised but for the removal or
>> retention.
>
> The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by
> operation of law or by reason of a judicial or administrative decision, or by reason of an
> agreement having legal effect under the law of that State."
>
> "Article 5.
> For purposes of this Convention –
> 'rights of custody' shall include rights relating to the case of the person of the child and,
> in particular, the right to determine the child's place of residence …"

**RESPONSE:**  Paragraph 32 of Petitioner's Petition for Return calls for a legal conclusion

to which no response is required. To the extent a response is required, KAITLYN admits

that Paragraph 32 accurately quotes portions of the Convention, and otherwise denies

Paragraph 32.


33.     On December 12, 2024, in Ireland, Stephen submitted his application pursuant to

the Hague Convention requesting the immediate return of the minor child. A copy of Stephen's

Hague Convention application is attached as **Exhibit D**.

**RESPONSE:**  In response to Paragraph 33 of Petitioner's Petition for Return, on

information and belief, KAITLYN admits the allegations contained therein.

## REMOVAL AND RETENTION OF THE CHILD BY KAITLYN

34.     *42 U.S.C. § 11604(b)* conditions this Court's authority to order a child removed

from a person having physical control of the child on the satisfaction of applicable requirements

of state law.

**RESPONSE:**  Paragraph 34 of Petitioner's Petition for Return calls for a legal conclusion

to which no response is required. To the extent a response is required, KAITLYN admits

that Paragraph 34 accurately quotes a provision of ICARA, and otherwise denies the

allegations contained therein. KAITLYN notes that the provision of ICARA cited was

reclassified in 2014 as 22 U.S.C. § 9004(b).


35.     *ICARA* also authorizes this Court, "[i]n furtherance of the objectives of … the

Convention … [to] take or cause to be taken measures under Federal or State law, as appropriate,

to protect the week-being of the child involved or to prevent further removal or concealment

before the final disposition of the petition." *42 U.S.C. § 11604*. Under *Section 210(a) of the

UCCJEA*, "[t]he court may order any party to the proceeding who is in this State or over whom

the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child, the court may order that he appear personally with the child…".

>  **RESPONSE:** Paragraph 35 of Petitioner's Petition for Return, calls for a legal conclusion to which no response is required. To the extent a response is required, KAITLYN admits that Paragraph 35 accurately quotes portions of ICARA and the Uniform Child Custody Jurisdiction Enforcement Act, and otherwise denies Paragraph 35 to the extent that it misstates the law. KAITLYN notes that the provision of ICARA cited was reclassified in 2014 as 22 U.S.C. § 9004.

36.     The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine the best interest of the child. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). "The entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

>  **RESPONSE:** Paragraph 36 of Petitioner's Petition for Return calls for a legal conclusion to which no response is required. To the extent a response is required, KAITLYN admits that Paragraph 36 accurately quotes the case law cited therein, and otherwise denies Paragraph 36 to the extent that it misstates the law.

37.     A Complaint under the Convention may be treated as an application for a Writ of Habeas Corpus under *28 U.S.C. § 2241*, et seq., pursuant to which this Court may issue an order directing Respondent to show cause on an expedited basis why the children should not be returned immediately to the jurisdiction of their habitual residence in Ireland. See *Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus … pursuant to *28 U.S.C. § 2243*"); see also *Miller v. Miller*, 240 F.3d 392, 397-98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W.D. Penn., 1998); *Convention, Art. 11* (establishing a six-week target time frame for resolution of petitions under the Convention).

> **RESPONSE:** Paragraph 37 of Petitioner's Petition for Return calls for a legal conclusion to which no response is required. To the extent a response is required, KAITLYN admits that Paragraph 37 accurately quotes the case law, statutory authority and the Convention, and otherwise denies Paragraph 37 to the extent that it misstates the law.

38.     Kaitlyn removed the child from Ireland and wrongfully retained the child in the United States as of about December 7, 2024, within the meaning of Article 3 of the Convention, and she continues to wrongfully retain the child in the United States despite efforts on the part of Stephen to have the child returned.

> **RESPONSE:** In response to Paragraph 38 of Petitioner's Petition for Return, KAITLYN admits that she removed the child from Ireland on December 7, 2024 and that she and the child have remained in the United States since that date. KAITLYN denies the remainder of the allegations contained in Paragraph 38.

39.     The child is presently in the Northern District of Illinois.

**RESPONSE:**  In response to Paragraph 39 of Petitioner's Petition for Return, KAITLYN admits the allegations contained therein.

40.     Kaitlyn has concealed the child in the United States from Stephen since on or about December 7, 2024, and pending the return of the child, Stephen seeks rights of access pursuant to Article 21 of the Convention.

**RESPONSE:**  In response to Paragraph 40 of Petitioner's Petition for Return, KAITLYN denies the allegations contained therein. Answering further, KAITLYN states that, since at least December 11, 2024, Stephen has been aware of the location of the minor child, and that Stephen has had and continues to have regular contact with the minor child.

41.     Stephen has the ability to provide safe passage from the United States to Ireland for the minor child.

**RESPONSE:**  In response to Paragraph 41 of Petitioner's Petition for Return, KAITLYN lacks sufficient knowledge or information to admit or deny the allegations contained therein and therefore denies same.

42.     Predicated upon the wrongful retention of the child by Kaitlyn and in accord with Article 26 of the Convention, Kaitlyn should be ordered to pay all necessary expenses, to include attorneys' fees and costs, incurred by Stephen in the preparation and presentation of this matter and in securing the return of the child to Ireland.

**RESPONSE:** In response to Paragraph 42 of Petitioner's Petition for Return, KAITLYN denies that she has wrongfully retained the child. KAITLYN admits that Stephen seeks the relief requested in Paragraph 42, but denies that he is entitled to such relief.

## AFFIRMATIVE DEFENSE

Pursuant to Fed. R. Civ. P. 8(c), and pending further investigation and discovery, KAITLYN alleges the following Affirmative Defense to the Petition. KAITLYN's investigation continues, and she reserves the right to amend or supplement her Answer to add any additional affirmative defenses or other defenses as additional information becomes available. By setting forth these Affirmative Defenses, KAITLYN does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Petitioner.

### *First Affirmative Defense*

1. Under Article 13(b) of the Convention, the Court, "is not bound to order the return of the child if the person … which opposes its return establishes that … there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention Art. 13(b).

2. Since the birth of the minor child, STEPHEN has repeatedly evidenced a complete lack of concern for the child's well-being and safety and has engaged in behaviors threatening harm to the minor child, including, but not limited to:

   a. In or about November, 2021, Shaking the minor child as an infant in response to the child crying;

    b. Repeatedly threatening to throw the child from the balcony of the parties' residence in response to the child crying and even moving toward the balcony with the child in his arms while making the threat on several occasions;

    c. Repeatedly making statements that he wished the child was dead;

    d. Playing a "pushing game" with the minor child, which consisted of STEPHEN pushing the minor child hard in an attempt to make him fall down, including an occasion on October 9, 2024 when the child cried after being pushed down, and STEPHEN responded by taking off his shoe and throwing it in the direction of the minor's head.

3. Following an incident in June of 2022 during which the child was scalded by hot tea while in the immediate care of STEPHEN's family members, a report was made to TUSLA, the Child and Family Agency in Ireland. During a call from TUSLA to investigate the incident, STEPHEN's family members insisted that KAITLYN lie to the investigators and implicate herself in the incident.

4. Throughout the time the parties resided together, STEPHEN repeatedly and regularly subjected KAITLYN to emotional and psychological abuse in the presence of the minor child.

5. In our about May of 2022, STEPHEN expressed to his then paramour that his "Plan D" involved killing Kaitlyn as that would be easier for everyone involved.

6. Throughout the time the parties resided together, STEPHEN frequently expressed severe anger in inappropriate ways in the presence of the minor child by screaming, yelling, and punching or kicking the doors and walls in the home often causing damage. The

principle triggering event for these expressions of anger was the parties' child crying or
otherwise needing assistance.

7.  Throughout the time the parties resided together, STEPHEN repeatedly expressed a
    desire for either himself or the minor child to be dead.

8.  Due to STEPHEN's pattern of abusive behavior, complete disregard for the child's
    safety, expressions of extreme and uncontrolled anger caused by the child's actions, and
    repeated expressions of a desire for either himself or the child to be dead, there is a grave
    risk that return of the child to Ireland would expose the child to physical or psychological
    harm or otherwise place the child in an intolerable situation.


    WHEREFORE, Respondent, KAITLYN RAE YOUNG, respectfully requests that Petitioner
STEPHEN JOHN  YOUNG'S Complaint and Petition for Return be denied in its entirety and
dismissed, and that the Court grant such other and further relief as it deems just and proper.


Date:   April 30, 2025


                                                        Respectfully submitted,

                                                        /s/ Phillip Brigham
                                                        Counsel for Respondent

Phillip Brigham
Law Office of Phillip Brigham, LLC
Kaitlyn Rae Young
53 West Jackson St., Suite 1560, Chicago, IL 60604
(312) 360-1722
pbrigham@phillipbrighamlaw.com
6299171

## **VERIFICATION**

I, Kaitlyn Rae Young, pursuant to 28 U.S.C. §1746, declare under penalty of perjury of the laws of the United States of America that the statements set forth in the Answer to Petitioner's Verified Complaint and Petition of Stephen John Young for Issuance of a Show Cause Order and for Return of the Minor Child to the Child's Habitual Residence of Ireland and Jurisdiction of Ireland, are true and correct to the best of my knowledge, information, and belief.

Executed: _4/30/2025_

_____
KAITLYN RAE YOUNG, Respondent

## CERTIFICATE OF SERVICE

I, Phillip Brigham, hereby certify that I have caused true and correct copies of the above and foregoing Answer to Petitioner's Verified Complaint and Petition of Stephen John Young for Issuance of a Show Cause Order and for Return of the Minor Child to the Child's Habitual Residence of Ireland and Jurisdiction of Ireland to be sent via e-filing to all counsel of record on April 30, 2025, in accordance with the rules on electronic filing of documents.

/s/ Phillip Brigham
Counsel for Respondent